**UNITED STATES of America,**
**Appellee,**

v.

**Tyrone D. WILSON, Appellant.**

**No. 229, Docket 72-1742.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1972.

Decided Nov. 9, 1972.

Shiela Ginsberg, New York City (The Legal Aid Society, Robert Kasanof, New York City, of counsel), for appellant.

Kenneth R. Feinberg, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Henry Putzel, III, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

Tyrone D. Wilson appeals from a judgment of the district court revoking his probation and sentencing him to imprisonment for six months. We vacate the judgment and remand the case for further proceedings.

On January 6, 1971, after Wilson had pleaded guilty to one count of a two-count indictment charging him with mail embezzlement in violation of Title 18 U.S.C. § 1709, Judge Motley sentenced him to a term of 18 months, suspended execution of the sentence, and placed him on probation for an identical period. As a special condition of probation the court ordered Wilson to pay all alimony and support assessments then owing by him to his estranged wife and to maintain such further alimony payments as might be ordered by the New York City Family Court.

At the time of sentence the court indicated that Wilson's records and pre-sentence report indicated that he lacked responsibility, and that if he did not make the alimony payments he was "going to jail for eighteen months." On June 27, 1972, following the filing of a petition by the Probation Office charging Wilson with violation of the special condition of his probation requiring him to make the support payments as ordered, a hearing was held by the court. The evidence disclosed that during part of the eighteen-month period since Wilson's sentence he had been employed for approximately fifteen months and had paid part of the alimony payments ordered by the Family Court but was in arrears. Wilson testified that he had made a good faith effort to comply with the court order but that he was in default because his gross income from the various jobs held by him during the interim had been too low to enable him to pay the full amount. In response to this plea of mitigating circumstances and lack of willfulness the Government contended simply that proof of non-payment, standing alone, was sufficient to establish the alleged violation.

At the conclusion of the hearing the court in an oral opinion found that Wilson had wilfully violated the terms of his probation, stating:

"At the time that the defendant appeared before this Court for sentence, the Court set as a special condition of probation that the defendant pay the amounts required by the Bronx Family Court and to pay on the arrears, that is, the amounts then due. It was the Court's feeling that if the defendant demonstrated by adhering to this simple requirement during the period of probation, that the defendant would have demonstrated that he had rehabilitated himself and had come to respect his obligations under the law, and to evidence that he would not become later involved in criminal activity.

"The probation report at that time seemed to warn that the defendant's past record would not sustain the false hope with respect to this defendant. The presentence report had indicated that the defendant has a long history of evading his responsibility, but, as I have indicated, the Court, nevertheless, felt that the defendant should be given an opportunity to demonstrate that despite the conviction for which he was before the Court, he would rehabilitate himself and demonstrate his respect for the law.

"At the time of sentence, also, when the Court imposed this condition, the defendant made no protest that he was unable to meet this obligation. I gather from the evidence here that at

no time did he advise the probation officer that he was unable because of the press of other financial obligations to meet this obligation. So that *I think it is clear that the defendant has wilfully violated the terms of his probation.* That is, it seems clear to me that if the defendant felt at the time he was placed on probation that he would be unable financially to meet the terms of the probation, he had a duty to advise the Court of this.

"Secondly, during the term of his probation, if he were finally pressed and was unable to make the payments, he had a duty to advise his probation officer of this, which he did not do. So that it seems to the Court that these two facts evidence an intent to violate the terms of probation.

"The probation is now revoked and the defendant is now sentenced to a term of six months." (Emphasis supplied)

Wilson, who has been released in his own recognizance pending this appeal, contends that the district court's decision, being based solely upon Wilson's failure to make payments which he could not afford to make, constitutes an abuse of discretion and a violation of his rights under the Due Process Clause of the Fifth Amendment, which he translates into a right to equal protection for the poor. See Bolling v. Sharpe, 347 U. S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

■ In reviewing the district court's decision we start from the premise that the trial judge is given broad discretion in the area of granting and revoking probation. United States v. Markovich, 348 F.2d 238 (2d Cir. 1965). However, this discretion is not unlimited and revocation of probation solely because of impecunity would not only be of doubtful constitutionality, see Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) ; Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), but would probably be an abuse of discretion, since the result would be to punish for poverty. See, e. g., United States v.

Taylor, 321 F.2d 339 (4th Cir. 1963) (revocation of probation based on good faith inability to pay deemed an abuse of discretion) ; but cf. Genet v. United States, 375 F.2d 960 (10th Cir. 1967) (revocation not an abuse of discretion where reason for making support payments a condition of probation was not rehabilitation but assurance of continuing support for dependents).

■ As the above-quoted opinion of the district court indicates, Judge Motley apparently did not revoke Wilson's probation merely because of his inability to pay, since she found it "clear that the defendant has *wilfully* violated the terms of his probation" (emphasis supplied). We therefore fail to find a violation of his due process rights. However, the two grounds articulated by the court do not provide a justifiable basis for its decision. The first of these was that Wilson had failed at the time of his original sentencing hearing to advise the court that he would not be able to afford to pay the $20 weekly instalments. Disregarding his probable inability as a layman to have expressed to the court at that time his apprehension over his financial prospects, it is difficult to imagine how he could be expected to have had the foresight to divine what his future income would be and what other untoward financial setbacks would be encountered. Indeed, as events turned out he substantially complied with the order during the initial part of the probationary period (from February 1971 through April 1971). In March 1972, more than a year after sentencing, the Family Court increased the weekly amount to be paid by him from $20 to $30 per week. Viewed as of the time of sentencing Wilson had reasonable grounds to believe in good faith that he would be able to make the payments. He should not, therefore, be punished for failure to anticipate financial inability.

The second ground asserted by the court as the basis for revocation—that during the probation period Wilson had failed to advise his probationary officer

of his inability to make the payments—is not only unsupported by evidence but is contrary to the evidence of record on the subject. Wilson's probation officer testified unequivocally that during the period of probation he had repeatedly been advised by Wilson of the latter's inability to pay and that on as many as 15 occasions the two had discussed the latter's problem in meeting the payments, which proved to be the "general topic" of most of their numerous conversations.

Although the district court's order revoking probation cannot be upheld upon the grounds asserted by it, the record indicates the possible existence of other supportable grounds which may have been considered by the court as the basis for its conclusion that Wilson had "wilfully violated the terms of his probation" but have been left unexpressed by it. For instance, an examination of Wilson's income and other expenses during certain months may reveal that although he had sufficient means during those months to make the support payments ordered by the court he deliberately failed to do so.

Accordingly we vacate the judgment revoking probation and remand the case for further proceedings consistent with this opinion.

OAKES, Circuit Judge (dissenting):

I dissent. I have searched the record, and in my view it fails to disclose any possible supportable grounds for the finding that Wilson "wilfully violated the terms of his probation." There was only a cursory attempt below to examine Wilson's income and no attempt to assess his expenses for any particular month or months. The court's finding of willful violation was in the face of undisputed testimony that he had been unemployed a considerable period of time, that his house had been robbed twice, that his gross income averaged between $200 and $300 per month, and that he made many payments in accordance with the court's condition of proba-

tion that he pay $15 a week plus $5 in arrears, and indeed that he sometimes sent $30 and $40 when he could afford it. The record indicates that the court's findings of willfulness was based upon the simple fact that he did not make payments which the only evidence in this record discloses he could not make. The district court's finding that "at no time did he advise the probation officer that he was unable because of the press of other financial obligations to meet this obligation" was in the face of the probation officer's direct testimony as follows:

Q. Has he offered any explanation of his inability to make those payments?

A. Yes, he has.

Q. What have those explanations been, so far as you can recall?

A. He doesn't have the money to continue under the order as promulgated by the Court in the Bronx.

Accordingly I would simply vacate the judgment revoking probation, without remand.