CLD-190                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3988
_____

AMIN A. RASHID,
                                        Appellant

v.

WARDEN PHILADELPHIA FDC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-05313)
District Judge: Jan E. DuBois

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 7, 2015

Before: FUENTES, GREENAWAY, JR., and VANASKIE, <u>Circuit</u> <u>Judges</u>

(Filed: June 11, 2015)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Amin A. Rashid appeals from an order of the District Court denying his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons that follow, we will summarily affirm.

Rashid was convicted in the United States District Court for the Eastern District of Pennsylvania in December, 1993 of wire fraud, mail fraud, money laundering, and laundering proceeds, in a scheme that involved defrauding 47 persons of at least $1.6 million. The Indictment stated that Rashid used aliases and corporate entities that he owned, including Amin A. Rashid and Associates ("AAR") and SEMCO Capital Corporation ("SEMCO"), to defraud potential borrowers. Specifically, the Indictment charged that he solicited customers seeking sizable commercial loans, and that he signed "consulting agreements" with those customers obligating him to use his "best efforts" to secure financing from an alleged lending source, usually one of the corporate entities he owned, such as SEMCO. The Indictment also charged that he, through SEMCO or another corporate entity he owned, then required payment of "advance fees" for financing that he did not intend to obtain. Rashid was sentenced in May, 1994 to a term of imprisonment of 168 months, to be followed by a 3-year term of supervised release. We affirmed the criminal judgment on August 4, 1995 in United States v. Rashid, C.A. No. 93-2241.

In November, 1995, Rashid filed a motion pursuant to 28 U.S.C. § 2255, challenging the conviction and sentence. The motion was denied in February, 1996, and we affirmed in December, 1996, United States v. Rashid, C.A. No. 96-1244. After that, Rashid filed numerous challenges to his conviction and sentence, all of which were

2

unsuccessful. Rashid was released from custody in September, 2005 to his term of supervised release.

While on supervised release, Rashid engaged in conduct which led to a new indictment on two counts of mail fraud and one count of aggravated identity theft in the United States District Court for the Eastern District of Pennsylvania, United States v. Rashid, D.C. Crim. No. 08-cr-00493. In May, 2009, a Superseding Indictment charged Rashid with ten counts of mail fraud, eight counts of aggravated identity theft, and one count of passing an altered postal money order. The Superseding Indictment alleged that Rashid defrauded clients of his company, the Center for Constitutional and Criminal Justice, by accepting fees to stop or reverse Sheriff's sales, or to recover proceeds from Sheriff's sales, while in fact performing none of these services. Rashid also stole his clients' identities. Following a jury trial, Rashid was convicted of nine counts of mail fraud and eight counts of aggravated identity theft. Rashid was sentenced in July, 2013 to a total term of imprisonment of 240 months, to be followed by 5 years of supervised release. We affirmed the criminal judgment on November 25, 2014, United States v. Rashid, 593 F. App'x 132 (3d Cir. 2014).

As a result of his most recent convictions, the United States Probation Office charged Rashid with violating the conditions of his 1994 term of supervised release. In response, Rashid filed a petition for writ of habeas corpus, 28 U.S.C. § 2241, again challenging his 1993 conviction and sentence. Rashid argued that United States v. Santos, 553 U.S. 507 (2008), rendered his money laundering conduct non-criminal. Specifically, Rashid argued that his convictions should be vacated because Santos

3

requires that laundered "proceeds" be derived from criminal profits, and his convictions were based on the use of the laundered proceeds to pay the expenses of his crimes, such as rent and employee salaries. During closing arguments, the Government argued to the jury that it had proven money laundering beyond a reasonable doubt because "money received from a victim" was used "to pay the salaries of SEMCO employees," N.T., 12/23/93, at 49, and that Rashid used "accounts not only of SEMCO, but of [AAR] to pay for the office and the office rent for the other company that he controlled, Capital Guarantee," id. at 48. In an order entered on August 22, 2014, the District Court denied Rashid's § 2241 petition on the merits, and later denied a timely motion for reconsideration in an order entered on September 12, 2014.

Rashid appeals. We have jurisdiction under 28 U.S.C. § 1291. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary action under Third Cir. LAR 27.4 and I.O.P. 10.6. We previously denied Rashid's emergency motion to stay a revocation hearing that had been scheduled for April 16, 2015 in the District Court.

We will summarily affirm the order of the District Court because no substantial question is presented by this appeal, Third Circuit LAR 27.4 and I.O.P. 10.6. As explained by the District Court, Santos does not render Rashid's money laundering conduct non-criminal. In Santos, the Supreme Court reviewed the money laundering convictions of two defendants for their role in operating an illegal lottery. 553 U.S. at 509-10 (plurality opinion). At issue was whether "proceeds" under 18 U.S.C. § 1956 applied only to profits of unlawful activity, rather than receipts. Finding the undefined

4

term ambiguous, a four-Justice plurality applied the rule of lenity, resulting in its conclusion that "proceeds" should be defined as "profits." Id. at 514. The plurality also explained that interpreting "proceeds" to mean receipts would create a "merger problem" because "nearly every violation of [an] illegal-lottery statute would also be a violation of the money-laundering statute." Id. at 515 (internal quotation marks omitted). Concurring in the judgment, Justice Stevens agreed that receipts from an illegal gambling business were not "proceeds" within the meaning of the money laundering statute and agreed that such an interpretation would create a "merger" problem. Id. at 527-28 (Stevens, J., concurring in the judgment).

The District Court began its discussion in Rashid's case by correctly noting that, when no single rationale explaining the result enjoys the assent of five Justices, as was the case in Santos, the holding of the case is limited to the narrowest ground supporting the result, Marks v. United States, 430 U.S. 188, 193 (1977). The District Court then set forth the elements of mail and wire fraud, and stated that the issue in Rashid's case was whether "proceeds" means "profits from the artifice or scheme to defraud," or instead means "profits from use of the mail or an interstate wire communication." United States v. Rashid, 39 F. Supp.3d 649, 653 (E.D. Pa. 2014). The Court held that, in Rashid's case, proceeds means profits from the mail and wire fraud, explaining that:

> In this case, the "unlawful activity" that generated the laundered "proceeds" was mail and wire fraud. Mail and wire fraud are completed crimes when the mail or wire communication is sent. Thus, the "essential expenses" of mail and wire fraud are costs incurred in sending mail or interstate wire communications, not, as defendant argues, the expense of maintaining the scheme or artifice to defraud. By paying the expenses of his artifice or scheme to defraud, through payment of salaries and rent, [Rashid]

5

> laundered profits from completed mail and wire fraud to facilitate future crimes.

Id. at 654 (citations and footnote omitted).

We agree with the District Court's analysis. Here, the payments were not essential elements of the completed fraud offenses and there is no merger problem. The Government was not required to prove that the transactions at issue (payment of salaries and rent) involved net profits. "Proceeds" means "net profits" only where a merger problem increases a defendant's sentencing exposure in a way that Congress could not have intended.[1] As the District Court noted in the margin, under Rashid's interpretation of Santos, "the proponent of a pyramid scheme charged with mail or wire fraud could never be prosecuted for money laundering because a pyramid scheme is premised on making the artifice or scheme to defraud appear profitable when, in fact, it is not." Id. at 654 n.1.

The District Court also summarily denied as meritless Rashid's claim that an amendment to his Indictment caused it to expire, and dismissed for lack of jurisdiction pursuant to 28 U.S.C. § 2255(h) and § 2244(b)(3)(A) a claim that the loss issue should have been determined by a jury. We summarily affirm these determinations, which do not require discussion.

---

[1] Section 1956 now defines "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). See also United States v. Richardson, 658 F.3d 333, 339 n.4 (2011). At the time Rashid was indicted, however, the term "proceeds" was undefined. The statutory definition thus does not apply here.

6

For the foregoing reasons, we will summarily affirm the orders of the District Court denying Rashid's § 2241 petition and subsequent motion for reconsideration.